IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
BEAUMONT DIVISION

| | |
|---|---|
| LARRY WEST, TROOPER;<br><br>          Plaintiff,<br><br>vs.<br><br>TEXAS DEPARTMENT OF PUBLIC SAFETY, STEVEN MCCRAW, STEVEN MACH, TERRY TRUETT, MICHELLE MCDANIEL, CHARLES HAVARD,<br><br>          Defendants. | NO. 1:22-CV-00415-MJT |

**REPORT AND RECOMMENDATION GRANTING DEFENDANT TEXAS DEPARTMENT OF PUBLIC SAFETY'S MOTION TO DISMISS**

This case is assigned to the Honorable Michael J. Truncale, United States District Judge. On June 7, 2024, Judge Truncale referred Defendant Texas Department of Public Safety ("DPS")'s *Motion for Dismissal of Plaintiff's First Amended Original Complaint* (Doc. No. 24) to the undersigned United States Magistrate Judge for consideration and disposition. After careful review of the filings and applicable law, the undersigned recommends granting DPS' instant motion because West's § 1983 claims are barred by Eleventh Amendment sovereign immunity and West fails to establish causation regarding his Title VII retaliation claims.

**I.      Factual and Procedural Background**

This case arises from an employment dispute between Plaintiff Larry West and DPS, his employer. West's claims are based on various forms of alleged mistreatment from his superior officers within his chain of command. At the outset, the undersigned notes that West's *First Amended Complaint* is replete with vague, conclusory assertions that are difficult to understand. Nonetheless, the undersigned will attempt to draw out the facts relevant to resolving the instant motion.

West's employment as a trooper with DPS began in 2007. Doc. No. 19 at 13–14. West was originally assigned to Orange County. *Id.* at 14. Early on in his career with DPS, West began experiencing conflict with his supervisors. *Id.* For instance, in 2009, Defendant Charles Havard, West's supervisor, told West that "maybe you need to find another job." *Id.* West was transferred from Orange County Highway Patrol to Jefferson County Highway Patrol in 2012 following an alleged argument between West and one of Havard's "domestic employees." *Id.* at 15. In February 2013, Havard did not recommend West for a promotion to Trooper II. *Id.* at 16. In a subsequent meeting between Havard, West, and Defendant Michelle McDaniel, Havard and McDaniel questioned what West's wife thought about him being a cop. *Id.* at 16–17. West alleges that these statements reveal that Havard and McDaniel were biased against him. *Id.* at 17.

In 2014, West alleges that Havard began treating him differently. *Id.* at 18. For instance, Havard began increasing his surveillance on West, including requesting a time log of West's locations from DPS Communications. *Id.* Additionally, Havard instructed West that he would get a "coaching session" as discipline for attending a concert, while other troopers received only a phone call in similar situations. *Id.* West and his wife divorced in June 2014, and West was granted a hardship schedule by DPS Director Steve McCraw, which allowed him to work fewer hours than other troopers. *Id.* Once the hardship schedule was granted, West alleges that his chain of command, which included Havard and McDaniel, became more hostile to him and denied him promotional opportunities, wrote false yearly evaluations of his performance, and damaged his credibility within the agency and with district attorneys and judges. *Id.* at 19.

West's conflicts with officers in his chain of command continued throughout 2015 and 2016. In a memo from Havard to McDaniel on May 25, 2015, Havard stated that West's judgment and reasoning skills "are the poorest he had ever encountered" and called him a marginal employee

and "a ticking time bomb." *Id.* On January 27, 2016, West received his yearly evaluation for the prior year, which stated that he was "ineffective" in leadership. *Id.* at 20. Two days later, on January 29, 2016, Havard stated that West would not be allowed to take vacation time for 90 days as a disciplinary measure. *Id.* In June 2016, Havard and McDaniel recommended West's termination from DPS, which was ultimately denied by DPS headquarters. *Id.* Several months later, in December 2016, McDaniel and Havard filed a false complaint to DPS headquarters in Austin related to someone West had been dating after his divorce. *Id.* at 22. West maintains that the underlying allegations in the complaint later turned out to be untrue. *Id.*

Conflicts between West and his chain of command continued throughout 2017. In January 2017, West met with Director McCraw and expressed that he had been harassed by his chain of command for the last two years after being granted a hardship schedule. *Id.* McCraw advised West to file a formal complaint about this alleged harassment, which he did on January 9, 2017. *Id.* Additionally, in January 2017, West received his yearly evaluation for the prior year, which stated he was "ineffective" in leadership, communications, and job knowledge. *Id.* at 23. In February 2017, West contends that Sergeant Kevin Hussey and Havard filed an EEO complaint against West alleging that he was racially profiling drivers. *Id.* at 24. In April 2017, West filed a formal complaint against his chain of command for unprofessional conduct and retaliation, which was ultimately closed by the Office of the Inspector General. *Id.* In June 2017, West was placed on another performance improvement plan for leadership. *Id.* In September 2017, West wrote a memo requesting a promotion from Trooper II to Trooper III, which was ultimately granted in mid-October 2017 after it had been denied for months. *Id.* at 25. On September 22, 2017, West was evaluated as competent after he had been on a performance improvement plan for approximately nine months. *Id.*

Sometime in late 2017 or early 2018, West learned that he had been placed on the Jefferson County District Attorney's Brady List, which is a list of officers who the district attorney's office believes are not credible. *Id.* at 25–26. When West learned of this, he sought a meeting with Bob Wortham, the Jefferson County District Attorney. *Id.* at 28. West's chain of command instructed him not to meet with the district attorney regarding his placement on the Brady List. *Id.* at 28.

On March 23, 2018, West submitted a memo supporting his request for a promotion to Corporal. *Id.* at 29. This promotion was denied. *Id.* West alleges that though he was the most senior officer in the office, another officer with less seniority was ultimately selected for the position. *Id.* Additionally, in April 2018, West submitted multiple communications to his chain of command, hoping to be considered for promotions to the Crisis Negotiations Team or Arrest and Control Tactics Instructor positions. *Id.* West contends that his communications were either ignored or that another officer was selected. *Id.* On October 5, 2018, West received another formal complaint from his chain of command. *Id.* at 32. West contends that this was retaliatory after West filed a formal complaint against Sergeant John Williamson for lying. *Id.*

On January 2, 2019, West applied for a position on a Crisis Negotiation Unit but was prevented from doing so by a superior officer. *Id.* at 35. At some point in early 2019, West learned that his yearly evaluation for the prior year would again find that he was "ineffective." *Id.* at 36. Additionally, West contends that in late January 2019, his chain of command stated that he was not allowed to work any secondary employment, which included his work as a church minister. *Id.* at 37. In May 2019, DPS Chief Ron Joy informed West that he would be transferred to Deweyville, Texas "for the betterment of the department." *Id.* at 38–39. On September 7, 2020, West learned that his application to be an Arrest and Control Tactics Instructor was denied again. *Id.* at 40.

West was denied promotions throughout 2021 and 2022 as well. In August 2021, West applied to become a DPS Sergeant as a public information officer and was denied. *Id.* at 42. West contends that Captain McDaniel chose a lesser qualified female officer instead of him. *Id.* During the same month, West expressed to Sergeant Folmar that he was interested in a promotion to an open Corporal position in Jasper, which was ignored. *Id.* at 42–43. In January 2022, West again received a yearly evaluation for 2021 that was lower than expected. *Id.* at 43. West met with Folmar regarding this evaluation, and Folmar explained to him that it was because West took more vacation time than any other trooper, which was causing morale issues with other officers. *Id.*

In November 2022, West applied for a promotion to Commercial Vehicle Enforcement Officer, which was denied by Sergeant Folmar, despite West being the most qualified person for the position. *Id.* at 44. Sergeant Folmar told West that he was denied because of a "coin toss" between West and another applicant, and that West had lost the coin toss. *Id.* West sought reconsideration of this decision from DPS Chief Orlando Alanis, where he learned that the coin toss story was a lie—the real reason for the denial of promotion was that Defendant Terry Truett had recommended against it, which stemmed from West's 2012 altercation with Havard's domestic employee. *Id.*

As a result of all the foregoing factual allegations, between 2018 and 2022, West filed three formal EEOC complaints against DPS. In October 2018, West filed an EEOC Charge of Discrimination against DPS for discrimination based on race, sex, religion, and hostile work environment. *Id.* at 33. On September 30, 2019, West filed a second Charge of Discrimination against DPS for retaliation. *Id.* West states that following this second EEOC charge, on November 8, 2019, DPS wrote to the EEOC and stated that West's claims against DPS asserted in the charge

5

were baseless. *Id.* On January 27, 2022, West filed a third EEOC Charge of Discrimination against DPS for retaliation. *Id.* at 43.

On December 14, 2023, West filed his *First Amended Complaint*. Doc. No. 19. DPS filed its instant *Motion to Dismiss* (Doc. No. 24) on January 31, 2024, and West filed a *Response* (Doc. No. 41) on March 7, 2024. DPS filed its *Reply* on March 11, 2024. Doc. No. 42. West filed his *Sur-Reply* on April 15, 2024. Doc. No. 55.

## II.   Legal Standards

### A. Rule 12(b)(1) Motion to Dismiss

A motion to dismiss filed under Rule 12(b)(1) of the Federal Rules of Civil Procedure challenges the subject-matter jurisdiction of a federal district court. *See* FED. R. CIV. P. 12(b)(1). The court "must presume that a suit lies outside [its] limited jurisdiction, and the burden of establishing federal jurisdiction rests on the party seeking the federal forum." *Gonzalez v. Limon*, 926 F.3d 186, 188 (5th Cir. 2019). "A case is properly dismissed for lack of subject matter jurisdiction when the court lacks the statutory or constitutional power to adjudicate the case." *Walmart, Inc. v. U.S. Department of Justice*, 21 F.4th 300, 307 (5th Cir. 2021) (quoting *Home Builders Ass'n of Miss., Inc. v. City of Madison*, 143 F.3d 1006, 1010 (5th Cir. 1998)). A court must address a jurisdictional challenge before addressing a challenge on the merits under Rule 12(b)(6). *See Ramming v. United States*, 281 F.3d 158, 161 (5th Cir. 2001).

When ruling on a 12(b)(1) motion, a court may consider "(1) the complaint alone; (2) the complaint supplemented by undisputed facts evidenced in the record; or (3) the complaint supplemented by undisputed facts plus the court's resolution of disputed facts." *In re S. Recycling, L.L.C.*, 982 F.3d 374, 379 (5th Cir. 2020). "[A] motion to dismiss for lack of subject matter

jurisdiction should be granted only if it appears certain that the plaintiff cannot prove any set of facts in support of his claim that would entitle the plaintiff to relief." *Ramming*, 281 F.3d at 161.

### B. Rule 12(b)(6) Motion to Dismiss

Under Rule 12(b)(6), a court may dismiss a complaint for "failure to state a claim upon which relief can be granted." FED. R. CIV. P. 12(b)(6). To survive a Rule 12(b)(6) motion to dismiss, a complaint "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). Plaintiffs must state enough facts to "nudge their claims across the line from conceivable to plausible." *Twombly*, 550 U.S. at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. When assessing a motion to dismiss under this rule, the court must accept as true all well-pleaded facts in the plaintiffs' complaint and view those facts in the light most favorable to the plaintiffs. *Allen v. Hays*, 65 F.4th 736, 743 (5th Cir. 2023). However, "[c]onclusory allegations, unwarranted factual inferences, or legal conclusions are not accepted as true." *Id.* (internal quotations omitted).

### III. Discussion

West alleges claims against DPS under two federal statutes: 42 U.S.C. § 1983 and Title VII of the Civil Rights Act. Doc. No. 19 at 47–49. The undersigned will discuss each in turn.

### A. Due Process and First Amendment Claims

DPS moves to dismiss West's § 1983 claims because the court does not have subject matter jurisdiction over these claims. Doc. No. 24 at 4. Specifically, DPS contends that the Eleventh Amendment provides DPS with sovereign immunity from suit because DPS is a Texas state

agency. *Id.* at 5.  In response, West contends that he seeks "prospective injunctive relief proscribing retaliation for having opposed denial of free speech and due process."  Doc. No. 41 at 2, ¶ 3.  West also vaguely contends that "DPS' rights to Eleventh Amendment immunity are abrogated by the Fourteenth Amendment."  *Id.* at 4, ¶ 13.  West's arguments are unavailing, and the undersigned finds that DPS is entitled to Eleventh Amendment immunity from West's § 1983 claims.

Under the Eleventh Amendment to the U.S. Constitution, "[f]ederal courts are without jurisdiction over suits against a state, a state agency, or a state official in his official capacity unless that state has waived its sovereign immunity or Congress has clearly abrogated it."  *Moore v. Louisiana Bd. of Elementary & Secondary Educ.*, 743 F.3d 959, 963 (5th Cir. 2014).  DPS is unquestionably a Texas state agency, DPS has not waived its sovereign immunity from suit, and Congress has not clearly abrogated Texas' immunity from suit regarding § 1983 claims.  *See Cleveland v. Liberty Cnty. Sheriff's Dep't*, 626 F. App'x 540, 542 (5th Cir. 2015); *see also Aguilar v. Texas Dep't of Crim. Just.*, 160 F.3d 1052, 1054 (5th Cir. 1998) (stating that the Eleventh Amendment bars § 1983 claims brought against a state).  West fails to allege any facts indicating otherwise.  Accordingly, DPS is entitled to Eleventh Amendment immunity from all of West's § 1983 claims.

West vaguely contends that he seeks prospective injunctive relief against DPS under the *Ex parte Young* doctrine.  Doc. No. 41 at 2, ¶ 3.  This argument is without merit.  A plaintiff cannot sue a state agency for prospective injunctive relief—only state officials may be enjoined under the *Ex parte Young* doctrine.  *Moore*, 743 F.3d at 963 (citing *Puerto Rico Aqueduct & Sewer Auth. v. Metcalf & Eddy*, 506 U.S. 139, 146 (1993)).

Accordingly, DPS is entitled to sovereign immunity from West's § 1983 claims under the Eleventh Amendment, and all of West's § 1983 claims against DPS should be dismissed.

### B. Title VII Retaliation Claim

To state a Title VII retaliation claim, a plaintiff must allege facts that establish (1) the employee engaged in activity protected by Title VII; (2) the employer took adverse employment action against the employee; and (3) a causal connection exists between that protected activity and the adverse employment action. *Fisher v. Lufkin Indus., Inc.*, 847 F.3d 752, 757 (5th Cir. 2017), *as revised* (Mar. 30, 2017). Under Title VII, protected activities consist of either (1) opposing any practice deemed an unlawful employment practice by Title VII (the "opposition clause") or (2) making a charge, testifying, assisting, or participating in any manner in an investigation, proceeding, or hearing under Title VII (the "participation clause"). *Ellis v. Compass Grp. USA, Inc.*, 426 F. App'x 292, 296 (5th Cir. 2011).

In his *First Amended Complaint* (Doc. No. 19), West does not clearly allege what specific protected activities form the basis of his retaliation claims. The undersigned discerns only three potential protected activities on which West could base his retaliation claims. First is West's EEOC Charge of Discrimination against DPS for discrimination based on race, sex, religion, and hostile work environment filed in October 2018.[1] Doc. No. 19 at 33. Second is West's EEOC Charge of Discrimination for retaliation filed on September 30, 2019. *Id.* Third is West's EEOC Charge of Discrimination for retaliation filed on January 27, 2022. *Id.* at 43. These EEOC charges constitute protected activity under the "participation clause." The undersigned discerns no allegations from the operative complaint showing that West engaged in activities under the opposition clause sufficient to support a "protected activity" under Title VII.

DPS does not contest that West can establish the first two elements. Doc. No. 24 at 6. Rather, DPS contends that West's Title VII retaliation claims should be dismissed because West

---

[1] West does not allege the specific date on which this charge was filed.

9

fails to allege facts establishing a causal connection between his EEOC complaints and the alleged denial of various promotions. *Id.* West does not substantively address DPS' contentions regarding causation in either his *Response* (Doc. No. 41) or *Sur-Reply* (Doc. No. 55). Even assuming, *arguendo*, that West can establish the first two elements, he fails to allege sufficient facts showing a causal connection between a protected activity and an adverse employment action.

To establish the causation element at the pleading stage, a plaintiff need not demonstrate that the protected activity was a but-for cause of the adverse employment action. *Jenkins v. City of Dallas, Texas*, No. 3:22-CV-0960-B, 2024 WL 583490, at *8 (N.D. Tex. Feb. 13, 2024) (citing *Gee v. Principi*, 289 F.3d 342, 345 (5th Cir. 2002)). Rather, a plaintiff must show only that "the two are not completely unrelated." *Besser v. Tex. Gen. Land Off.*, 834 F. App'x 876, 882 (5th Cir. 2020). At bottom, "a plaintiff must allege facts showing the employer was aware of the protected activity; otherwise, there can be no causal connection between the protected activity and any adverse employment action taken by the employer." *Tapley v. Simplifile, LC*, No. 3:19-CV-00227-E, 2020 WL 208817, at *3 (N.D. Tex. Jan. 14, 2020); *see also Equal Employment Opportunity Comm'n v. EmCare, Inc.*, 857 F.3d 678, 683 (5th Cir. 2017).

At the pleading stage, an employee meets his prima facie burden with factual allegations that an adverse employment action occurred shortly after a protected activity. *Milteer v. Navarro Cnty., Texas*, 652 F. Supp. 3d 754, 766–67 (N.D. Tex. 2023) (citing *Strong v. Univ. Healthcare Sys., L.L.C.*, 482 F.3d 802, 808 (5th Cir. 2007)). Two months or less between the protected activity and adverse employment action is usually sufficient to constitute an inference of causation. *See, e.g.*, *Garcia v. Professional Contract Services, Inc.*, 938 F.3d 236, 243 (5th Cir. 2019) (noting that a two-month lapse between the protected activity and adverse employment action is close enough to show a causal connection); *Outley v. Luke & Assocs., Inc.*, 840 F.3d 212, 219 (5th Cir. 2016)

(finding two month lapse between protected activity and denial of raise sufficient to show causal connection); *Evans v. City of Houston*, 246 F.3d 344, 354 (5th Cir. 2001) (finding up to four-month lapse sufficient); *but see Raggs v. Mississippi Power & Light Co.*, 278 F.3d 463, 471–72 (5th Cir. 2002) (finding that a five-month lapse is too much to support an inference of causation); *Wright*, 990 F.3d at 433–34 (finding a two-year lapse too remote to permit a reasonable inference of causation).

West's operative complaint is permeated with allegations about DPS' alleged retaliatory mistreatment of him. Few of these allegations, however, are related to the protected activities in which he engaged. West alleges that he was denied promotion to three positions: (1) public information officer in August 2021, commercial vehicle enforcement officer in November 2022, and Corporal in December 2022. Doc. No. 19 at 42, 44. None of these alleged adverse employment actions are sufficiently close in time to West's EEOC charges filed in October 2018 and September 2019, two of his alleged protected activities, to demonstrate a causal connection because they occurred multiple years after West filed the EEOC charges. Doc. No. 19 at 33. Accordingly, West fails to state a Title VII retaliation claim based on either the October 2018 or September 2019 EEOC charges.

Regarding West's third alleged protected activity, his EEOC Charge of Discrimination filed on January 27, 2022, he offers several allegations of adverse employment actions suffered following the charge. First, he states that on January 28, 2022, he received his 2021 yearly evaluation, which was lower than expected and stated that he used more vacation time than any other troopers, which caused morale issues in the department. Doc. No. 19 at 43. Negative performance reviews, without more, do not constitute adverse employment actions. *See Johnson v. McDonald*, 623 F. App'x 701, 704 (5th Cir. 2015) (stating that "a low performance evaluation

alone is not an adverse employment action"). Thus, West fails to allege a retaliation claim on this basis.

Second, West alleges that he was denied a promotion to Commercial Vehicle Enforcement Officer in November 2022, despite being the most qualified officer for the position. Doc. No. 19 at 44. This occurred nearly ten months after the EEOC charge was filed, which is too remote in time to permit a reasonable inference of causation. In any case, West fails to allege any facts regarding who within DPS denied him the promotion and whether that person had any knowledge of West's January 2022 EEOC charge. *See EmCare*, 857 F.3d at 683 (stating that "to establish the causation prong of a retaliation claim, the employee should demonstrate that the employer knew about the employee's protected activity").

Third, West vaguely alleges that he was denied a promotion to Corporal in December 2022. Doc. No. 19 at 44. This alleged denial of a promotion occurred eleven months after the January 2022 EEOC charge was filed, which is too remote in time to permit a reasonable inference of causation. Additionally, though West mentions Captain Michelle McDaniel as the decisionmaker, he alleges no facts showing that Captain McDaniel had any knowledge of his January 2022 EEOC charge. Thus, West fails to state a Title VII retaliation claim based on his alleged denials of a promotion following his third EEOC charge.

In sum, West fails to meet his burden of establishing a prima facie Title VII retaliation claim. Accordingly, his Title VII retaliation claims against DPS should be dismissed.

IV.     **Conclusion**

The undersigned recommends **GRANTING** Defendant Texas Department of Public Safety's *Motion for Dismissal of Plaintiff's First Amended Complaint* (Doc. No. 24).

## V.     **Objections**

Pursuant to 28 U.S.C. § 636(b)(1)(C), each party to this action has the right to file objections to this Report and Recommendation. Objections to this Report must (1) be in writing, (2) specifically identify those findings or recommendations to which the party objects, (3) be served and filed within fourteen (14) days after being served with a copy of this Report, and (4) be no more than eight (8) pages in length. *See* 28 U.S.C. § 636(b)(1)(C); FED. R. CIV. P. 72(b)(2); E.D. TEX. CIV. R. CV-72(c). A party who objects to this Report is entitled to a *de novo* determination by the United States District Judge of those proposed findings and recommendations to which a specific objection is timely made. 28 U.S.C. § 636(b)(1)(C); FED. R. CIV. P. 72(b)(3).

A party's failure to file specific, written objections to the proposed findings of fact and conclusions of law contained in this Report, within fourteen (14) days of being served with a copy of this Report, bars that party from: (1) entitlement to *de novo* review by the United States District Judge of the findings of fact and conclusions of law, and (2) appellate review, except on grounds of plain error, of any such findings of fact and conclusions of law accepted by the United States District Judge. *See Rodriguez v. Bowen*, 857 F.2d 275, 276–77 (5th Cir. 1988); *Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1428–29 (5th Cir. 1996) (en banc).

SIGNED this 2nd day of August, 2024.

_____
Zack Hawthorn
United States Magistrate Judge